RAMIREZ-SMITH LAW
NIKKI R. SMITH, ISB: 9030
NEAL F. DOUGHERTY, CSB: 302612
TALIA D. BURNETT, CSB: 286318
JACOB C. ROURK, ISB: 12585
CASEY PARSONS, ISB: 11323

Attorneys for Petitioner

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **Antonio Perez Camacho,** <br><br> Petitioner, <br><br> v. <br><br> **Mike Hollinshead,** Sheriff, Elmore County; <br> **Kenneth Porter**, Director of Boise U.S. Immigration and Customs Enforcement Field Sub-Office; <br> **Jason Knight**, Director of the Salt Lake City U.S. Immigration and Customs Enforcement Field Office; <br> **Kristi Noem,** Secretary of the U.S. Department of Homeland Security; and <br> **Pam Bondi,** Attorney General of the United States, in their official capacities, <br><br> Respondents. | Case No. TBD <br><br> **PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner, Antonio Perez Camacho, present in the United States without lawful immigration status, in removal proceedings with an application for asylum filed and pending since May of 2024, hereby petitions this Court for a writ of habeas corpus. On October 19, 2025, Mr. Perez was seized by agents with Immigration and Customs Enforcement (ICE) during an ICE raid at a race track in Wilder, Idaho.

2. He now faces unlawful detention, because the Department of Homeland Security (DHS) and the Executive Office of Immigration Review (EOIR) have concluded that aliens who entered the United States without inspection are subject to mandatory detention without the possibility of bond.

3. DHS policy issued on July 8, 2025 instructs all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without admission or inspection—to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

4. Likewise, on September 5, 2025, the Board of Immigration Appeals (BIA or Board) issued a precedent decision, binding on all immigration judges, holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

5. Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

6. Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

7. Petitioner asks the Court to issue a writ of habeas corpus by determining that his detention is not justified because the government has not established by clear and convincing evidence that he presents a risk of flight or danger in light of available alternatives to detention, and order his release. In the alternative, Mr. Perez asks the Court to issue a writ of habeas corpus and order his release within 20 days unless Respondents schedule a bond hearing before an immigration judge, wherein they will bear the burden to demonstrate that he is a danger to the community or a flight risk to justify continued detention.

8. Petitioner asks this Court to find that his apprehension and detention without opportunity for bond was unconstitutional and to order his release, and to stay his transportation out of the Court's jurisdiction.

## JURISDICTION AND VENUE

9. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

11. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

12. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493- 500 (1973), venue lies in the United States District Court for the District of Idaho, because Petitioner is detained at the Elmore County Detention Center in Mountain Home, Idaho,

which is within the jurisdiction of this District. 28 U.S.C. § 1391(b); *see also* 28 U.S.C. § 2241(d); *Palma v. Holder*, 2014 U.S. Dist. LEXIS 175721 (9th Cir. 2014).

## REQUIREMENTS OF 28 U.S.C. § 2243

13. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

14. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

15. Petitioner is a national of Mexico who has lived in the United States since February of 2024. Petitioner is currently detained at the Elmore County Detention Center in Mountain Home, Idaho, and is a resident of Caldwell, Idaho. He is in the custody, and under the direct control, of Respondents and their agents.

16. Respondent Mike Hollinshead is the Sheriff of Elmore County, and he has immediate physical custody of Petitioner pursuant to the Elmore County detention facility's contract

with U.S. Immigration and Customs Enforcement to detain noncitizens and is a legal custodian of Petitioner. Respondent Hollinshead is a legal custodian of Petitioner.

17. Respondent, Kenneth Porter, is sued in his official capacity as the Director of the Boise Field Office of U.S. Immigration and Customs Enforcement. Respondent is a legal custodian of Petitioner and has authority to release him.

18. Respondent, Jason Knight, is sued in his official capacity as the Director of the Salt Lake City Field Office of U.S. Immigration and Customs Enforcement. Respondent is a legal custodian of Petitioner and has authority to release him.

19. Respondent Kristi Noem is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's detention. Respondent Noem is a legal custodian of Petitioner.

20. Respondent Pam Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA.  Respondent Bondi is a legal custodian of Petitioner.

## STATEMENT OF FACTS

21. Petitioner is a 56-year-old citizen of Mexico, who has been living in Idaho since his entry into the United States without inspection on February 24, 2024. He was placed into removal proceedings by filing of a notice to appear (NTA) dated February 26, 2024.

22. Petitioner submitted his application for asylum with the immigration court on May 9, 2024. His application is still pending.

23. On October 19, 2025, Petitioner was apprehended in Wilder Idaho during the course of a police and ICE raid on a racetrack where they suspected illegal gambling to be taking place. Petitioner was not charged in relation to any such crime, but was confronted by police and ICE personnel who determined he was not a citizen of the United States and placed him into custody.

24. Petitioner has an individual hearing scheduled for September 20, 2027, and work authorization through November 15, 2029. There have been no other purported changes to his situation which would place him now in detention. He was detained alongside many others only while in proximity to purported illegal gambling on October 19, 2025.

25. Petitioner is now being held in Mountain Home, ID, Elmore County Detention Center.

26. Petitioner has no known criminal history.

27. ICE officials have indicated they do not intend to release Petitioner.

## LEGAL FRAMEWORK

28. The Supreme Court has stated that it "'is well established the Fifth Amendment entitles aliens to due process of law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id*. at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against unlawful or arbitrary personal restraint or detention."). This fundamental due process protection applies to all noncitizens, including

both removable and inadmissible noncitizens. *See id.* at 721 (Kennedy, J., dissenting) ("both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious").

29. Due process therefore requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* at 690 (internal quotation marks omitted). In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention—to mitigate the risks of danger to the community and to prevent flight. *Id.*; *Demore*, 538 U.S. at 528.

30. The INA prescribes three basic forms of detention for noncitizens in removal proceedings.

31. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

32. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

33. Last, the Act also provides for detention of noncitizens who have been previously ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)-(b).

34. This case concerns detention provisions at §§ 1226(a) and 1225(b)(2).

35. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal

Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

36. Following enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

37. Thus, in the decades that followed, most people who entered without inspection— unless they were subject to some other detention authority—received bond hearings. That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

38. On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

39. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[1] claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy

---

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

applies regardless of when a person is apprehended, and affects those who have resided in the United States for months, years, and even decades

40. On September 5, 2025, the BIA adopted this same position in a published decision, Matter of Yajure Hurtado. There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

41. Since Respondents adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected Matter of Yajure Hurtado, which adopts the same reading of the statute as ICE.

42. Even before ICE or the BIA introduced these nationwide policies, IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here. There, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

43. Subsequently, court after court has adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation. *See, e.g.*, *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25

CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *see also, e.g.*, *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

44. Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the

statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

45. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, which "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

46. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. See 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the Rodriguez Vazquez court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." Rodriguez Vazquez, 779 F. Supp. 3d at 1257 (citing Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010)); see also Gomes, 2025 WL 1869299, at *7.

47. Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

48. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A).

49. Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

## CLAIMS FOR RELIEF

### COUNT ONE

50. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

51. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

52. The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Stay Petitioner's transportation to another jurisdiction until this Court resolves his petition for a writ of habeas corpus;

(3) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(4) Declare that denial of Petitioner's detention under 8 U.S.C. § 1225(b) denies him his statutory rights under 8 U.S.C. § 1226(a).

(5) Declare that Petitioner's detention is unlawful.

(6) Issue a writ of habeas corpus ordering Respondents to release Petitioner immediately; or, in the alternative, issue an order requiring Respondents to schedule a bond hearing within 20 days, wherein they will bear the burden to demonstrate by clear and convincing evidence that he is a danger to the community or a flight risk, to justify his continued and currently unjustified detention.

(7) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(8) Grant any further relief this Court deems just and proper.

Respectfully submitted,

/s/ *Jacob C. Rourk*
Jacob C. Rourk
Attorney for Petitioner
Ramirez-Smith Law
444 W. Iowa Ave.
Nampa, ID 83686
Tel.: (208) 461-1883

Dated: October 21, 2025

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Antonio Perez Camacho, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 21st day of October, 2025.

s/*Jacob C. Rourk*
Jacob C. Rourk

Case 1:25-cv-00593-BLW     Document 1     Filed 10/21/25     Page 14 of 14