BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
**JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444**
**FIRST ASSISTANT UNITED STATES ATTORNEY**
**CHRISTINE G. ENGLAND, IDAHO STATE BAR NO. 11390**
**ASSISTANT UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-9375
Email: Justin.Whatcott@usdoj.gov
         Christine.England@usdoj.gov

Attorneys for Federal Respondents

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANTONIO PEREZ CAMACHO,<br><br>          Petitioner,<br><br>     v.<br><br>MIKE HOLLINSHEAD, Sheriff, Elmore County; KENNETH PORTER, Director of Boise U.S. Immigration and Customs Enforcement Field Sub-Office; JASON KNIGHT, Director of the Salt Lake City U.S. Immigration and Customs Enforcement Field Office; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; and PAM BONDI, Attorney General of the United States, in their official capacities,<br><br>          Respondents. | Case No. 1:25-CV-00593-BLW<br><br>**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS (Dkt. No. 1)** |

## **Table of Contents**

INTRODUCTION .................................................................................................................. 3

LEGAL STANDARD ........................................................................................................... 3

LEGAL BACKGROUND ..................................................................................................... 4

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 5

ARGUMENT ........................................................................................................................ 6

I.      Petitioner's claims and requested relief are barred by 8 U.S.C. § 1252. ............ 6

II.     Section 1225 governs Petitioner's detention ......................................................... 9

III.    Petitioner has failed to exhaust administrative remedies. .................................. 14

IV.     Even if Petitioner prevails, release is not the appropriate remedy ..................... 15

V.      The Court should withdraw its Order prohibiting Respondents from relocating Petitioner. ............................................................................................................... 16

CONCLUSION ................................................................................................................... 17

## INTRODUCTION

Petitioner Antonio Perez Camacho is in removal proceedings under 8 U.S.C. § 1229a. Pursuant to 8 U.S.C. § 1225(b)(2), Immigration and Customs Enforcement (ICE) detained him and he remains in ICE's custody. Petitioner challenges his detention and seeks release. Through multiple provisions of 8 U.S.C. § 1252, Congress has stripped federal courts of jurisdiction over challenges to the commencement of removal proceedings, including detention during those proceedings. Because this Court lacks jurisdiction over the Petitioner's claims, the Petition should be dismissed.

Even assuming that the Court has jurisdiction, as an applicant seeking admission, Petitioner is correctly subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Because the statute is not ambiguous, the Court should look no further than the language of the statute. *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). 8 U.S.C. § 1225(a)(1) provides that "an alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission." And 8 U.S.C. § 1225(b)(2) provides that "an alien who is an applicant for admission . . . shall be detained" for removal proceedings, unless an immigration officer determines that he is "clearly and beyond a doubt entitled to be admitted." Because Petitioner is an applicant for admission, he is subject to mandatory detention under Section 1225(b)(2). Thus, on its merits, the Petition for Habeas Corpus should be dismissed.

## LEGAL STANDARD

Habeas proceedings provide a forum to challenge the legality of confinement. *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court may grant a writ of habeas corpus only when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (holding that even non-egregious errors

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)      - 3**

of state law, are insufficient to justify habeas relief).  Before considering the merits of the

Petition, the Court must first evaluate its jurisdiction.  *See Williams v. Woodford*, 384 F.3d 567,

582 (9th Cir. 2004).

## LEGAL BACKGROUND

The detention and removal of inadmissible noncitizens in the United States is governed

by a complex statutory framework.  A noncitizen "who arrives at a port of entry, i.e., a place

where an alien may lawfully enter, must apply for admission," as must a noncitizen who arrives

at any other place.  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020) (internal

quotation marks omitted).  If the noncitizen is inadmissible, he may be removed.  *Id.*  "The usual

removal process involves an evidentiary hearing before an immigration judge, and at that hearing

an alien may attempt to show that he or she should not be removed."  *Id.*  Proceedings are

initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear

with the Immigration Court.  *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520, 520, 2011 WL

219682 (BIA 2011).  "During the time when removal is being litigated, the alien will either be

detained, at considerable expense, or allowed to reside in this country, with the attendant risk that

he or she may not later be found."  *Thuraissigiam*, 591 U.S. at 108.

A noncitizen may be detained under several provisions of the Immigration and

Nationality Act, but Sections 1225(b)(2) and 1226(a) are relevant here.  Under 8 U.S.C.

§ 1225(b)(2), a noncitizen who is an applicant for admission "shall be detained for a proceeding

under section 1229a," if the examining officer determines that the noncitizen is "not clearly and

beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2).  Noncitizens detained pursuant

to Section 1225 are not eligible for a bond hearing.  *See Jennings v. Rodriguez*, 583 U.S. 281,

297 (2018).

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)        - 4**

Under Section 1226(a), a noncitizen "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. 8 C.F.R. § 236.1(c)(8). The noncitizen will be released if he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). "Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Id.* at 1197.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Antonio Perez Camacho is a citizen of Mexico. (Petition, Dkt. No. 1 ¶ 21; Declaration of Kenneth W. Porter (Porter Decl.) ¶ 4.) Petitioner alleges that he entered the United States "without inspection" on February 24, 2024. (Dkt. No. 1 ¶ 21.) On February 26, 2024, the United States Border Patrol issued Petitioner a Notice to Appear (NTA) and initiated removal proceedings under 8 U.S.C. § 1229, charging Petitioner under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States who has not been admitted or paroled. (Dkt. No. 1 ¶ 21; Porter Decl. ¶ 12.) On October 19, 2025, Petitioner was apprehended at an illegal horse racing and gambling event in Wilder, Idaho. (Dkt. No. 1 ¶¶ 1, 23.) ICE detained Petitioner pursuant to 8 U.S.C. § 1225(b)(2). (Porter Decl. ¶ 11.) Petitioner is currently detained at the Elmore County Detention Center in Mountain Home, Idaho (Dkt. No. 1 ¶¶ 15, 25; Porter Decl. ¶ 18.)

On October 21, 2025, Petitioner filed a Petition for Writ of Habeas Corpus. (Dkt. No. 1.) Before filing his Petition for Habeas Corpus, Petitioner did not request a bond hearing before an immigration judge. (Porter Decl. ¶ 17.) Petitioner did not file a Motion for a Temporary

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)      - 5**

Restraining Order.  On October 28, 2025, the Court ordered that Respondents may not remove the Petitioner from the United States or the District of Idaho.  (Dkt. No. 5.)  The Court ordered Respondents to respond to the Petition by November 3, 2025.  (*Id.*)

## ARGUMENT

**I.    Petitioner's claims and requested relief are barred by 8 U.S.C. § 1252.**

Petitioner bears the burden of establishing that this Court has subject matter jurisdiction over his claims.  *See Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000); *Finley v. United States*, 490 U.S. 545, 547-48 (1989).  As a threshold matter, Petitioner's claims are jurisdictionally barred under 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9).

Courts lack jurisdiction over any claim or cause of action arising from any decision to commence or adjudicate removal proceedings or execute removal orders.  *See* 8 U.S.C. § 1252(g) ("no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence proceedings*, *adjudicate cases*, or execute removal orders") (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm*., 525 U.S. 471, 483 (1999) ("There was good reason for Congress to focus special attention upon, and make special provision for, judicial review of the Attorney General's discrete acts of 'commenc[ing] proceedings, adjudicat[ing] cases, [and] execut[ing] removal orders'—which represent the initiation or prosecution of various stages in the deportation process.").  Section 1252(g) also bars district courts from hearing challenges to the method by which the government chooses to commence removal proceedings, including the decision to detain an alien pending removal.  *See Limpin v. United States*, 828 Fed. App'x 429 (9th Cir. 2020) (holding district court properly dismissed under 8 U.S.C. § 1252(g) "because claims stemming from the decision to arrest and detain an alien at the commencement of removal

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)      - 6**

proceedings are not within any court's jurisdiction"); *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and bars review of "ICE's decision to take [plaintiff] into custody and to detain him during his removal proceedings.").

Removal proceedings commence by the filing of a NTA in immigration court.  *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 600 (9th Cir. 2002).  "The Attorney General may arrest the alien against whom proceedings are commenced and detain that individual until the conclusion of those proceedings."  *Herrera-Correra v. United States*, No. 08-CV-2941, 2008 WL 11336833, at *3 (C.D. Cal. Sept. 11, 2008) (internal citation omitted).  "[A]n alien's detention throughout this process arises from the Attorney General's decision to commence proceedings" and review of claims arising from such detention is barred under 1252(g).  *Id.* (citing *Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007)); *Wang v. United States*, No. 10-CV-0389, 2010 WL 11463156, at *6 (C.D. Cal. Aug.18, 2010); 8 U.S.C. § 1252(g); *but see Vasquez Garcia v. Noem*, No. 25-CV-02180, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025).[1]

Here, Petitioner's claims arise from his detention during removal proceedings, which stem from the Attorney General's decision to commence such proceedings.  As such, § 1252(g)

---

[1]        In *Vasquez Garcia v. Noem*, the District Court for the Southern District of California determined that Section 1252(g) did not bar jurisdiction over claims related to detention, relying on *Nielsen v. Preap*, 586 U.S. 392 (2019) and *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788 (9th Cir. 2020).  Neither of these decisions mandate the district court's conclusion.  The part of the *Preap* decision cited in *Vasquez Garcia* was not the majority opinion—it was the opinion of only three justices.  *See Nielsen v. Preap*, 586 U.S. 392 (explaining that Part II of the Opinion was joined only by Justices Alito, Roberts and Kavanaugh); *see also id.* at 422 (Justices Thomas and Gorsuch concurring in part and concluding that "no court has jurisdiction to decide questions concerning the detention of aliens before final orders of removal have been entered").  And the *Gonzalez* decision concerned an immigration detainer, not detention arising out of the issuance of removal proceedings.  *Gonzalez. v. v. U.S. Immigr. & Customs Enf't*, 975 F.3d at 797.  Indeed, in addressing detention at the commencement of removal proceedings, the Ninth Circuit concluded that the district court lacked jurisdiction.  *Limpin v. United States*, 828 F. App'x 429.

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)        - 7**

bars this Court's review over Petitioner's claims. *See S.Q.D.C. v. Bondi*, No. 25-CV-3348, 2025 WL 2617973, at * 2 (D. Minn. Sept. 9, 2025) (finding that § 1252(g) jurisdictionally bars review of a petitioner's challenge to ongoing detention during removal proceedings).

Moreover, under 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact . . . *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Further, judicial review of a final order is available only through "a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5). The Supreme Court has made clear that § 1252(b)(9) is "the unmistakable 'zipper' clause," channeling "judicial review of all" "decisions and actions leading up to or consequent upon final orders of deportation," including "non-final order[s]," into proceedings before a court of appeals. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 483, 485; *see J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (noting § 1252(b)(9) is "breathtaking in scope and vise-like in grip and therefore swallows up virtually all claims that are tied to removal proceedings").

"Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M.*, 837 F.3d at 1031 ("[W]hile these sections limit *how* immigrants can challenge their removal proceedings, they are not jurisdiction-stripping statutes that, by their terms, foreclose *all* judicial review of agency actions. Instead, the provisions channel judicial review over final orders of removal to the courts of appeal.") (emphasis in original, internal citations omitted); *see id*. at 1035 ("§§ 1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and-practices challenges . . . whenever they 'arise from' removal

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)       - 8**

proceedings"). These provisions divest district courts of jurisdiction to review both direct and indirect challenges to removal orders, including decisions to detain for purposes of removal or for proceedings. *See Jennings*, 583 U.S. at 294-95 (section 1252(b)(9) includes challenges to the "decision to detain [an alien] in the first place or to seek removal").

While holding that it was unnecessary to comprehensively address the scope of § 1252(b)(9), the Supreme Court in *Jennings* provided guidance on the types of challenges that may fall within the scope of § 1252(b)(9). *See Jennings*, 583 U.S. at 293-94. The Court found that "§ 1252(b)(9) [did] not present a jurisdictional bar" in situations where "respondents . . . [were] not challenging the decision to detain them in the first place." *Id.* at 294-95. In this case, Petitioner *does* challenge the government's decision to detain him in the first place. Though Petitioner attempts to frame his challenge as one relating to detention authority, rather than a challenge to DHS's decision to detain him in the first instance, such creative framing does not evade the preclusive effect of § 1252(b)(9). Indeed, that Petitioner is challenging the basis upon which he is detained is enough to trigger § 1252(b)(9) because "detention *is* an 'action taken . . . to remove' an alien." *See Jennings*, 583 U.S. at 318 (emphasis original); 8 U.S.C. § 1252(b)(9).

As such, Petitioner's claims should be presented before the appropriate federal court of appeals because he challenges Respondents' decision or action to detain him, which must be raised before a court of appeals, not this Court. *See* 8 U.S.C. § 1252(b)(9).

The Court should deny the pending motion and dismiss this matter for lack of jurisdiction under 8 U.S.C. § 1252.

## II. Section 1225 governs Petitioner's detention.

Petitioner's claims for alleged statutory and constitutional violations fail because he is subject to mandatory detention under 8 U.S.C. § 1225.

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)    - 9**

Based on the plain language of the statue, the Court should reject Petitioner's argument that § 1226(a) governs his detention instead of § 1225.  (*See* Dkt. No. 1, ¶ 44-45.) Section 1225(b)(2)(A) requires mandatory detention of "'an alien who is *an applicant for admission*, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted[.]'"  *Chavez v. Noem*, No. 25-CV-02325, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) (quoting 8 U.S.C. § 1225(b)(2)(A)) (emphasis in original); *see also Vargas Lopez v. Trump*, No. 25-CV-526, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025) (holding detention appropriate under § 1225(b)(2)); *but see, e.g., Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025); *E.C. v. Noem*, No. 2:25-CV-01789, 2025 WL 2916264, at *13 (D. Nev. Oct. 14, 2025).  Section 1225(a)(1) "expressly defines that '[a]n alien present in the United States who has not been admitted . . . shall be deemed for purposes of this Act *an applicant for admission*.'"  *Id.* (quoting 8 U.S.C. § 1225(a)(1)) (emphasis in original).  Here, Petitioner is an "alien present in the United States who has not been admitted."  Thus, as found by the district court in *Chavez v. Noem* and as mandated by the plain language of the statute, Petitioner is an "applicant for admission" and subject to the mandatory detention provisions of § 1225(b)(2).

When the plain text of a statute is clear, "that meaning is controlling and [courts] need not examine legislative history."  *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 848 (9th Cir. 2011).  But to the extent legislative history is relevant here, nothing "refutes the plain language" of § 1225.  *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011). Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") to correct "an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully."

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)        - 10**

*Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc), *declined to extend by, United States v. Gambino-Ruiz*, 91 F.4th 981 (9th Cir. 2024); *see Matter of Yajure Hurtado*, 29 I&N Dec. 216 at 223, 2025 WL 2674169 (citing H.R. Rep. No. 104-469, pt. 1, at 225 (1996)).  It "intended to replace certain aspects of the [then] current 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry."  *Id.* (quoting H.R. Rep. 104-469, pt. 1, at 225).  Interpreting § 1225 to only apply to aliens encountered attempting to enter the United States or aliens encountered shortly after they gained entry without inspection would put aliens who "crossed the border unlawfully" in a better position than those "who present themselves for inspection at a port of entry."  *Id.*  Noncitizens who presented at a port of entry would be subject to mandatory detention under § 1225, but those who crossed illegally would be eligible for a bond under § 1226(a).  *See Matter of Yajure Hurtado*, 29 I&N Dec. at 225 ("The House Judiciary Committee Report makes clear that Congress intended to eliminate the prior statutory scheme that provided aliens who entered the United States without inspection more procedural and substantive rights than those who presented themselves to authorities for inspection.").  Thus, the Court should "'refuse to interpret the INA in a way that would in effect repeal that statutory fix' intended by Congress in enacting the IIRIRA."  *Chavez,* 2025 WL 2730228, at *4 (quoting *United States v. Gambino-Ruiz*, 91 F.4th 981, 990 (9th Cir. 2024).

Petitioner's interpretation reads "applicants for admission" out of the Section 1225(b)(2).  One of the most basic interpretative canons instructs that a "statute should be construed so that effect is given to all its provisions."  *See Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up).  Petitioner's interpretation renders the phrase "applicants for admission" in

Section 1225(b)(2)(A) "inoperative or superfluous, void or insignificant." *See id.* If Congress did not want § 1225(b)(2)(A) to apply to "applicants for admission," then it would not have included the phrase "applicants for admission" in the subsection. *See* 8 U.S.C. § 1225(b)(2)(A); *see also Corley*, 556 U.S. at 314.

Additionally, the phrase "alien seeking admission" does not limit the scope of § 1225(b)(2)(A). The BIA has long recognized that "many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." *Matter of Lemus-Losa*, 25 I&N Dec. 734, 743, 2012 WL 948566 (BIA 2012). There is "no legal authority for the proposition that after some undefined period of time residing in the interior of the United States without lawful status, the INA provides that an applicant for admission is no longer 'seeking admission,' and has somehow converted to a status that renders him or her eligible for a bond hearing under . . . 8 U.S.C. § 1226(a)." *Matter of Yajure Hurtado*, 29 I&N Dec. at 221 (citing *Lemus-Losa*, 25 I&N Dec. at 743 & n.6).

Statutory language "is known by the company it keeps." *Marquez-Reyes v. Garland*, 36 F.4th 1195, 1202 (9th Cir. 2022) (quoting *McDonnell v. United States*, 579 U.S. 550, 569 (2016)). The phrase "seeking admission" in § 1225(b)(2)(A) must be read in the context of the definition of "applicant for admission" in § 1225(a)(1). Applicants for admission are both those individuals present without admission and those who arrive in the United States. *See* 8 U.S.C. § 1225(a)(1). Both are understood to be "seeking admission" under § 1225(a)(1). *See Matter of Yajure Hurtado*, 29 I&N Dec. at 221; *Lemus-Losa*, 25 I&N Dec. at 743. Congress made that clear in § 1225(a)(3), which requires that all aliens "who are applicants for admission or otherwise seeking admission . . . be inspected by immigration officers." 8 U.S.C. § 1225(a)(3).

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)        - 12**

The word "or" here "introduce[s] an appositive–a word or phrase that is synonymous with what precedes it ('Vienna or Wien,' 'Batman or the Caped Crusader')." *United States v. Woods*, 571 U.S. 31, 45 (2013).

Respondents' interpretation of § 1225 does not render § 1226(a) superfluous. *Chavez v. Noem*, 2025 WL 2730228, at *5. There, the court noted that § 1226(a) "'generally governs the process of arresting and detaining' certain aliens, namely 'aliens who were inadmissible at the time of entry *or who have been convicted of certain criminal offenses since admission*.'" *Id.* (quoting *Jennings*, 583 U.S. at 288) (emphasis in original). Moreover, § 1226(a) also covers those deemed to be deportable who were admitted as a nonimmigrant but failed to maintain their status or comply with the conditions of their status (i.e., visa overstays). *See Jennings*, 583 U.S. at 288; 8 U.S.C. § 1227(a)(1). In turn, individuals who have not been charged with specific crimes listed in § 1226(c) are still subject to the discretionary detention provisions of § 1226(a) as determined by the Attorney General. *See* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."). Therefore, heeding the plain language of § 1225(b)(2) has no effect on § 1226(a).

Similarly, the application of § 1225's explicit definition of "applicants for admission" does not render the addition of § 1226(c) by the Riley Laken Act superfluous. Once again as correctly determined by the district court in *Chavez v. Noem*, the addition of § 1226(c) simply removed the Attorney General's detention discretion for aliens charged with specific crimes. 2025 WL 2730228, at *5.

Because Petitioner is properly detained under § 1225, his claims fail.

**III.    Petitioner has failed to exhaust administrative remedies.**

On an alternative basis, the Court should deny the Petition for failure to exhaust

administrative remedies.  The Ninth Circuit requires that "habeas petitioners exhaust available

judicial and administrative remedies before seeking relief under § 2241."  *Castro–Cortez v. INS*,

239 F.3d 1037, 1047 (9th Cir. 2001) (internal citations omitted).  "When a petitioner does not

exhaust administrative remedies, a district court ordinarily should either dismiss the petition

without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless

exhaustion is excused."  *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (internal

citations omitted); *see also Alvarado v. Holder*, 759 F.3d 1121, 1127 n.5 (9th Cir. 2014) (issue

exhaustion is a jurisdictional requirement); *Tijani v. Holder*, 628 F.3d 1071, 1080 (9th Cir. 2010)

(no jurisdiction to review legal claims not presented in the petitioner's administrative

proceedings before the BIA).  Here, Petitioner is attempting to bypass the administrative scheme

by not seeking a bond from an immigration judge.  Thus, the Court should dismiss or stay this

matter to allow Petitioner an opportunity to exhaust his administrative remedies and seek a bond

in the appropriate venue.

To seek a bond from an immigration judge, Petitioner will have to be transferred to a

district in which an immigration judge has jurisdiction.  (Porter Decl. ¶¶ 14-16, 18.)  Because

Idaho does not have an immigration detention facility, detainees are routinely transferred to

immigration facilities in other districts, where immigration judges have jurisdiction.  (*Id.* ¶ 15.)

No immigration judge conducts detention hearings in Idaho.  (*Id.* ¶ 15-16.)

Exhaustion is not futile, in light of the Board of Immigration Appeals' decision in *Matter

of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  In that decision, the BIA affirmed "the

Immigration Judge's determination that he did not have authority over [a] bond request because

aliens who are present in the United States without admission are applicants for admission as

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)        - 14**

defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." *Yajure Hurtado*, 29 I&N Dec. at 220.

But this does not mean that an immigration judge would necessarily deny Petitioner's request for a bond hearing. In the weeks since *Yajure Hurtado*, numerous federal district courts have weighed in on the application of § 1225(b)(2)(A)—some courts agree with the analysis in *Yajure Hurtado*; many do not. *See, e.g., Chavez v. Noem*, 2025 WL 2730228, at *4 (holding detention appropriate under § 1225(b)(2)); *Vargas Lopez v. Trump*, 2025 WL 2780351, at *9 (same); *Rodriguez v. Bostock*, 779 F. Supp. 3d at 1263; *E.C. v. Noem*, 2025 WL 2916264, at *13. If Petitioner is transferred to a district in which an immigration judge has jurisdiction (likely Nevada), that immigration judge should be given the opportunity to rule based on the law in that district. Moreover, even a "high probability of denial . . . does not weigh in favor of waiving exhaustion," particularly here, where Petitioner has not ever sought a bond from an immigration judge. *Laguna Espinoza v. Dir. of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No. 25-CV-02107, 2025 WL 2878173, at *3 (N.D. Ohio Oct. 9, 2025). This Court should allow the transfer of Petitioner to another district to allow that administrative process to play out.

Because Petitioner has not even attempted to seek bond from an immigration judge, the Court should deny the Petition without prejudice. The Court should also allow Petitioner to be transferred to a district with an immigration judge to seek a bond hearing.

## IV. Even if Petitioner prevails, release is not the appropriate remedy.

Petitioner asks this Court, among other remedies, to "assume jurisdiction" over this immigration matter and either "release Petitioner immediately" or "issue an order requiring Respondents to schedule [another] bond hearing." (Dkt. No. 1 at 12-13.) This request seeks to bypass the established immigration adjudication and review process that Congress designed to handle the volume and complexity of immigration cases. *See Mirmehdi v. United States*, 689

F.3d 975, 982 (9th Cir. 2012) ("Congress has established a substantial, comprehensive, and intricate remedial scheme in the context of immigration.") (quoting *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009)).  Petitioner is properly in the immigration court system, where he has the opportunity to litigate his claims, including appellate review, as provided by Congress. Allowing these challenges to be raised here improperly circumvents the immigration judge and the comprehensive immigration system statutorily created to handle such cases and claims.

To the extent that this Court concludes that Petitioner is improperly detained pursuant to § 1225, it should allow Petitioner to be transferred to a district where an immigration judge presides and order that judge to conduct a bond hearing pursuant to § 1226(a).  *See, e.g., Rodriguez v. Bostock*, 779 F. Supp. 3d at 1263 (ordering United States to provide petitioner with bond hearing under 8 U.S.C. § 1226(a) within fourteen days); *E.C. v. Noem*, 2025 WL 2916264, at *13 (ordering United States to provide Petitioner with bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days).  Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up).  "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" *Id.* (internal citation omitted).  Here, the specific harm that Petitioner alleges—that he is unlawfully barred from receiving a bond hearing—is remedied by granting his request for a bond hearing under Section 1226(a).  *See Rodriguez v. Bostock*, 779 F. Supp. 3d at 1263.

## V.    The Court should withdraw its Order prohibiting Respondents from relocating Petitioner.

Although Petitioner did not seek a temporary restraining order, the Court issued an Order prohibiting Respondents from relocating Petitioner out of the District of Idaho.  (Dkt. No. 5.) But the Court lacks jurisdiction to dictate Petitioner's place of detention.  Indeed, the Secretary

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)          - 16**

of the Department of Homeland Security has "broad discretion . . . to choose the pace of

detention for deportable" noncitizens. *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir.

2022) (citing 8 U.S.C. § 1231(g)). Having granted the Secretary such broad discretion, Congress

then prohibited courts from reviewing those discretionary decisions:

> Notwithstanding any other provision of law (statutory or
> nonstatutory), including section 2241 of title 28, or any other habeas
> corpus provision, . . . no court shall have jurisdiction to review—
> . . . (ii) any other decision or action of the Attorney General or the
> Secretary of Homeland Security the authority for which is specified
> under this subchapter to be in the discretion of the Attorney General
> or the Secretary of Homeland Security, other than the granting of
> relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii). Combined, Sections 1231(g)(1) and 1252(a)(2)(B)(ii)

unambiguously strip courts of jurisdiction to adjudicate the Government's determination of

where a noncitizen should be housed pending removal proceedings. And because the Court has

no jurisdiction to review the Respondents' decision of where a noncitizen should be housed, it

lacks jurisdiction to prohibit Respondents from relocating Petitioner outside of this District.

Moreover, such a restriction prevents Respondents from providing Petitioner with the

bond hearing that he seeks because there are no immigration judges with jurisdiction to conduct

a bond hearing in Idaho. (*See* Porter Decl. ¶¶ 14-16.) The Court should immediately lift its

order prohibiting Respondents from relocating the Petitioner outside of the District of Idaho.

## <u>CONCLUSION</u>

For the foregoing reasons, Respondents respectfully request that the Court dismiss this

action and lift its Order prohibiting Respondents from relocating Petitioner outside of the District

of Idaho.

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)        - 17**

Respectfully submitted this 3rd day of November, 2025.

                                                        BART M. DAVIS
                                                         UNITED STATES ATTORNEY
                                                         By:


                                                       /s/ Christine G. England
                                                       CHRISTINE G. ENGLAND
                                                       Assistant United States Attorney

**RESPONSE TO PETITION FOR HABEAS CORPUS (Antonio Perez Camacho)      - 18**